Pages 1 - 33

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William H. Alsup, Judge

| | | |
|---|---|---|
| RENATO C. PIZARRO and | ) | |
| MERCEDITA D. PIZARRO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | **NO. C 19-08425 WHA** |
| | ) | |
| ASTRA FLOORING COMPANY; et | ) | |
| al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| RENATO C. PIZARRO and | ) | |
| MERCEDITA D. PIZARRO, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| VS. | ) | **NO. C 19-08427 WHA** |
| | ) | |
| ASTRA FLOORING COMPANY; et | ) | |
| al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

San Francisco, California
Wednesday, March 11, 2020

**TRANSCRIPT OF PROCEEDINGS**

**(APPEARANCES CONTINUED ON NEXT PAGE)**

Reported By:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
Official Reporter

1   **APPEARANCES**:

2   For Plaintiffs:
3                   MAUNE, RAICHLE, HARTLEY, FRENCH
                    & MUDD, LLC
4                   2000 Powell Street - Suite 400
                  Emeryville, California  94608
            BY:  **CARLOS J.E. GUZMAN, ATTORNEY AT LAW**
5                **MARISSA Y. UCHIMURA, ATTORNEY AT LAW**

6   For Defendants General Electric Company and ViacomCBS:
                  WFBM, LLP
7                   601 Montgomery Street - 9th Floor
                  San Francisco, California  94111
8             BY:  **DEREK S. JOHNSON, ATTORNEY AT LAW**

9   For Defendant Union Carbide Corporation:
                  LEWIS, BRISBOIS, BISGAARD & SMITH LLP
10                  333 Bush Street - Suite 1100
                 San Francisco, California  94104
11            BY:  **FLORENCE A. McCLAIN, ATTORNEY AT LAW**

12   For Defendants ITT LLC, Grinnell LLC, York International
  Corporation, Goulds Pumps LLC, and Hill Brothers Chemical
13   Company:
                  MORGAN, LEWIS & BOCKIUS LLP
14                  One Market - Spear Street Tower
                 San Francisco, California  94105
15            BY:  **MARISA R. CHAVES, ATTORNEY AT LAW**

16   For Defendants Flowserve U.S.A., Inc., as successor in interest
  to Durametallic Corporation, and DWIP and its wholly owned
17   subsidiaries:
                  FOLEY & MANSFIELD
18                  2185 N. California Blvd. - Suite 575
                 Walnut Creek, California  94596
19            BY:  **RANDALL K. BERNARD, ATTORNEY AT LAW**

20   For Defendants FMC Corporation on behalf of its former Northern
  Pump business, Genuine Parts Company, and Astra Flooring
21   Company:
                  POND NORTH LLP
22                  Two Embarcadero Center - Suite 1450
                 San Francisco, California  94111
23            BY:  **DANA BURCH, ATTORNEY AT LAW**

24

25

**APPEARANCES**:   (CONTINUED)

For Defendant Velan Valves Corporation:
                        GORDON & REES LLP
                        1111 Broadway - Suite 1700
                        Oakland, California  94607
                BY:   **DIEGO WU MIN, ATTORNEY AT LAW**

For Defendants Flowserve U.S., Inc., solely as successor to
Edward Valves, Inc., and Rockwell Manufacturing Company:
                        TUCKER ELLIS LLP
                        201 Mission Street - Suite 2310
                        San Francisco, California  94105
                BY:   **DANIEL J. KELLY, ATTORNEY AT LAW**

For Defendants Metalclad Insulation LLC and Pep Boys Manny, Moe
& Jack of California:
                        DENTONS US LLP
                        1999 Harrison Street - Suite 1300
                        Oakland, California  94612
                BY:   **MICHAEL E. SANDGREN, ATTORNEY AT LAW**

For Defendant Weir Valves & Controls U.S.A.:
                        BHC LAW GROUP LLP
                        5900 Hollis Street - Suite O
                        Emeryville, California  94608
                BY:   **KURT PUTNAM, ATTORNEY AT LAW**

For Defendant IMO Industries, Inc.:
                        LEADER, BERKON, COLAO & SILVERSTEIN LLP
                        50 California Street - Suite 1500
                        San Francisco, California  94111
                BY:   **FREDERICK W. GATT, ATTORNEY AT LAW**

For Defendant National Steel and Shipbuilding Company:
                        DEMLER, ARMSTRONG & ROWLAND LLP
                        601 California Street - Suite 704
                        San Francisco, California  94108
                BY:   **PAUL M. BESSETTE, ATTORNEY AT LAW**

| | |
|---|---|
| 1 | **Wednesday - March 11, 2020**                    **1:58 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---oOo--- |
| 4 | **THE CLERK:**  Calling Civil action 19-8425, Pizarro, |
| 5 | et al., vs. Astra Flooring Company, et al., and related case |
| 6 | 19-8427, Pizarro, et al., vs. Astra Flooring Company, et al. |
| 7 | Counsel, please step forward and state your appearances |
| 8 | for the record. |
| 9 | (Pause in proceedings.) |
| 10 | **THE COURT:**  Appearances, please. |
| 11 | **THE CLERK:**  And, Counsel, before you leave the |
| 12 | hearing, I need your business cards. |
| 13 | **MR. GUZMAN:**  Good morning, Your Honor.  Carlos Guzman |
| 14 | from Maune, Raichle, Hartley, French & Mudd for the plaintiffs, |
| 15 | G-U-Z-M-A-N. |
| 16 | **THE COURT:**  Excellent.  Welcome. |
| 17 | **MR. GUZMAN:**  Also appearing for plaintiffs |
| 18 | (indicating). |
| 19 | **MS. UCHIMURA:**  Good afternoon, Your Honor.  Marissa |
| 20 | Uchimura also appearing on behalf of the plaintiffs.  Thank |
| 21 | you, Your Honor. |
| 22 | **MR. JOHNSON:**  Good afternoon.  Derek Johnson on behalf |
| 23 | of the General Electric Company and Viacom CBS, Incorporated. |
| 24 | **THE COURT:**  Okay. |
| 25 | **MS. McCLAIN:**  Good afternoon, Your Honor.  Florence |

1   McClain from Lewis, Brisbois, Bisgaard & Smith on behalf of

2   defendant Union Carbide Corporation.

3           **MS. CHAVES:**  Good afternoon, Your Honor.  Marisa

4   Chaves on behalf of defendants ITT LLC, Grinnell LLC, York

5   International Corporation, Goulds Pumps LLC, and Hill Brothers

6   Chemical Company.

7           **MR. BERNARD:**  Good afternoon, Your Honor.  Randall

8   Bernard on behalf of Flowserve U.S.A., Inc., as successor in

9   interest to Durametallic Corporation, and defendant DWIP and

10  its wholly owned subsidiaries.

11          **MS. BURCH:**  Good afternoon, Your Honor.  Dana Burch,

12  B-U-R-C-H, on behalf of three defendants:  FMC Corporation on

13  behalf of its former Northern Pump business, Genuine Parts

14  Company, and Astra Flooring Company.

15          **MR. WU:**  Good afternoon, Your Honor.  Diego Wu for

16  Velan Valves Corporation.

17          **MR. KELLY:**  Good afternoon, Your Honor.  Daniel Kelly

18  of Tucker Ellis on behalf of defendant Flowserve U.S., Inc.,

19  solely as successor to Edward Valves, Inc., and Rockwell

20  Manufacturing Company.

21          **MR. SANDGREN:**  Good afternoon.

22          **THE COURT:**  Hold on for one second.

23      Please go get me the file.

24                      (Pause in proceedings.)

25          **THE COURT:**  All right.

1          **MR. SANDGREN:**  Good afternoon, Your Honor.  My name is

2     Michael Sandgren.  I'm with the law firm of Dentons appearing

3     on behalf of Metalclad Insulation LLC as well as Pep Boys

4     Manny, Moe & Jack of California.

5          **MR. PUTNAM:**  Good afternoon, Your Honor.  Kurt

6     Putnam -- that's K-U-R-T P-U-T-N-A-M -- on behalf of

7     Weir Valves & Controls U.S.A. from the law firm of BHC.  Thank

8     you.

9          **MR. GATT:**  Frederick Gatt on behalf of IMO Industries,

10    I-M-O Industries, Inc.

11         **MR. BESSETTE:**  Good afternoon, Your Honor.  Paul

12    Bessette for defendant National Steel and Shipbuilding Company

13    from the law firm of Demler, Armstrong & Rowland.

14         **THE COURT:**  Thank you.

15    All right.  Have a seat, everybody.

16    This is a motion to remand; right?

17         **MS. UCHIMURA:**  That's correct, Your Honor.

18         **THE COURT:**  All right.  So who is NASSCO?

19         **MR. BESSETTE:**  National Steel and Shipbuilding

20    Company, Your Honor.

21         **THE COURT:**  Is that you?

22         **MR. BESSETTE:**  That's me.

23         **THE COURT:**  So I want to give the plaintiff an

24    opportunity.  This is massive, but I am inclined to rule, I'm

25    not making a final ruling, I'm just tentatively of the view

1   that the federal officer removal statute allows removal here

2   because a colorable claim has been made by NASSCO, and I want

3   to give you a chance to talk me out of that.

4           **MS. UCHIMURA:**  Certainly, Your Honor.

5           **THE COURT:**  Okay.  You get to go first because that's

6   the way I'm inclined to go, and then I'll give NASSCO a chance

7   for rebuttal.  All right?

8           **MS. UCHIMURA:**  Do I step up to the podium?

9           **THE COURT:**  Yeah, please.  Yes.  Use the lectern.

10          **MS. UCHIMURA:**  Thank you, Your Honor.

11      We don't believe that NASSCO has, in fact, shown that

12  there is a causal nexus between the conduct giving rise to

13  plaintiffs' allegations here and any actions that NASSCO took

14  pursuant to government direction or government contract.  And

15  the reason for that is that plaintiffs are suing NASSCO here

16  for general negligence for failing to implement safety

17  precautions, failing to take measures to protect Mr. Pizarro

18  from being exposed to asbestos in the course of performing

19  their shipbuilding activities for the Navy.

20      And NASSCO has failed to present any evidence in its

21  notice of removal that the federal government required it to

22  act negligently or precluded it from taking safety precautions

23  that could have prevented Mr. Pizarro from being exposed to

24  asbestos.

25      And one of the things I did want to draw the Court's

1    attention to, and I do apologize, this was not in our papers,

2    but I wanted to bring the Court's attention to the case of

3    *Morton v. 3M Company*.  This is a 2018 case out of the Central

4    District of California.  I have a copy for Your Honor if you're

5    interested in seeing it or I could just give you the citation.

6          **THE COURT:**  Have you told the other side?

7          **MS. UCHIMURA:**  I did not get an opportunity, but I

8    have a copy for NASSCO as well.  Additionally, NASSCO should be

9    familiar with this.

10         **THE COURT:**  How come you didn't put this in your

11   brief?

12         **MS. UCHIMURA:**  I don't have a good reason other than I

13   overlooked it.

14         **THE COURT:**  What?

15         **MS. UCHIMURA:**  We missed it, but it is directly on

16   point.  It is a case --

17         **THE COURT:**  All right.  Let me see it and show it to

18   the other side.  They've got so many lawyers over there, I'm

19   sure one of them read this case.

20       What's the name of it?  *Morton v.*?

21         **MS. UCHIMURA:**  *3M Company*.

22       And the significance of this case -- and while I realize

23   it should have been in our papers, NASSCO should be familiar

24   with this case -- this is a case where the plaintiffs filed a

25   personal injury asbestos lawsuit in state court and NASSCO

1 removed the case to federal court asserting federal officer.

2     And like NASSCO has done here, in *Morton* NASSCO supported

3 its notice of removal with a declaration from Admiral Horn, a

4 declaration that, at least from the context of the case,

5 appears to be substantially similar to the declaration of

6 Admiral Horn that was submitted by NASSCO here.  And the Court

7 held that this evidence was not sufficient to establish a

8 causal link between NASSCO's action taken pursuant to

9 government direction and the claims -- plaintiffs' claims, nor

10 is it sufficient to establish a colorable federal defense.

11     **THE COURT:**  That was Judge Manny Real.

12     **MS. UCHIMURA:**  Correct.

13     **THE COURT:**  What year was that?

14     **MS. UCHIMURA:**  2018.

15     **THE COURT:**  2018.

16     Now wait.  Let me ask you this because I am going to read

17 this decision, but tell me if this is true.  There's a decision

18 called *Leite*, L-E-I-T-E.

19     **MS. UCHIMURA:**  Yes.

20     **THE COURT:**  How do you say that?  *Leite*?

21     **MS. UCHIMURA:**  Honestly, I'm not entirely sure,

22 Your Honor.  I would pronounce it *Leite*, but I'm not sure.

23     **THE COURT:**  Do any of you know?  You're probably in

24 the case so you might know.

25                 (No response.)

1          **THE COURT:**  Okay.  Nobody knows.

2       Anyway, the Navy in that case, there was a declaration by

3    this very same admiral; right?  And the Court of Appeals said

4    that removal was proper.  So how do you distinguish that *Leite*

5    case in the Ninth Circuit?

6          **MS. UCHIMURA:**  I would distinguish that case by

7    pointing out, first, that in the *Leite* case the defendant in

8    that case was a product manufacturer, Crane Co., who

9    manufactured valves, and I believe that Admiral Horn declared

10   that those products -- there were government -- specific

11   military specifications that required the use of asbestos in

12   those valves and, therefore, Crane Co. could not have complied

13   with its contractual obligations to the government of supplying

14   military equipment that incorporated asbestos while still

15   complying with its state court duty -- or state law duty to not

16   unnecessarily endanger the health and safety of workers.

17       Here there are product liability claims at issue, but

18   we --

19          **THE COURT:**  Well, wait.  Wait.

20       All right.  Then what is it?  What was NASSCO's role in

21   all this, then?

22          **MS. UCHIMURA:**  NASSCO was -- it's a shipyard so they

23   employ people who basically construct ships for the Navy and

24   also performing work on ships.  Specific to this case, they

25   performed work on the *USS Bristol County* while Mr. Pizarro was

1   serving aboard it.  They performed an overhaul and they also, I

2   believe, did some repair work -- just kind of general repair

3   work.

4          **THE COURT:**  What is it that NASSCO should have done

5   differently here that would -- in your view, your negligence

6   claim, what should NASSCO have done differently here to have

7   solved the problem?

8          **MS. UCHIMURA:**  Well, we set forth several things in

9   our complaint that NASSCO should have done differently that

10  could have potentially prevented Mr. Pizarro from being exposed

11  to asbestos or could have protected him from being exposed to

12  asbestos, including failing to warn him about the health

13  hazards of asbestos, failing to properly train its employees

14  and contractors in the safe use of asbestos-containing

15  materials, failing to adopt procedures -- or they could have

16  adopted safe procedures, they could have cordoned off the area

17  where they're performing their work so that asbestos fiber

18  would not be released into the vicinity where Mr. Pizarro was

19  working.

20         **THE COURT:**  Mr. Pizarro, what did he do on this

21  renovation?  What was his role in relationship to asbestos?

22         **MS. UCHIMURA:**  He was serving in the United States

23  Navy on board the ship while the work was taking place.

24         **THE COURT:**  So he wasn't even involved in the work?

25         **MS. UCHIMURA:**  I believe that's -- that is correct.

1          **THE COURT:**  So he was just a sailor on the ship that

2     was being worked on?

3          **MS. UCHIMURA:**  That's correct, Your Honor.  And,

4     again, that is the same --

5          **THE COURT:**  Well, how can a sailor follow orders of

6     the -- if he's a sailor, how could the shipyard have directed

7     him as to what he should do or not do?

8          **MS. UCHIMURA:**  The shipyard perhaps could not have

9     directed him as to what he should or should not do.  Again, he

10    was not the one performing the work.  NASSCO's employees were

11    performing the work, and they could have taken measures to

12    ensure that their work practices did not unnecessarily endanger

13    the health of Mr. Pizarro.

14         **THE COURT:**  Well, like what?  Could they have -- I

15    mean, give me a specific.  Here I'm imagining this out of my

16    own so let's say that he gets shore leave.  So he's going down

17    the gangplank to the dock and there should be a sign there

18    saying "Warning:  Asbestos is being used in the renovation and

19    take precautions"?  I mean, what would -- give me a concrete

20    example of something NASSCO could have done that would have

21    saved his health.

22         **MS. UCHIMURA:**  I think certainly warnings are one way

23    that they could have prevented him from being exposed.

24    Additionally, they could have implemented wet-down techniques

25    when they were removing asbestos insulation so that the

```
 1   asbestos did not become friable.  They --
 2             THE COURT:  Wait.  Wait.  Did not become what?
 3             MS. UCHIMURA:  Friable.  It was not released into the
 4   air.
 5             THE COURT:  Okay.
 6             MS. UCHIMURA:  They could have cordoned off the area
 7   where they're working so that only NASSCO employees were
 8   working there.  They could have provided respiratory
 9   protection.
10        Additionally, I think --
11             THE COURT:  I mean, you can't go -- can you -- maybe
12   you can.  Can a contractor go on board a Navy vessel and hand
13   out masks like that?
14             MS. UCHIMURA:  I imagine they could recommend the use
15   of respiratory protection.
16        Additionally, I think it's significant here that NASSCO
17   has not provided any evidence here that it was not possible for
18   them to perform the contracting activities without causing
19   asbestos to be released into the air.  There is no evidence in
20   their notice of removal that they necessarily would have
21   exposed -- that asbestos exposure necessarily would have
22   occurred as a result of their activity.  So there was nothing
23   that they could have done to prevent asbestos exposure from
24   occurring.  And NASSCO has not shown that it could not --
25             THE COURT:  Okay, wait.  I want you to hold that
```

1    thought and don't go away.  I want to ask the other side a

2    question.

3         So what do you say to counsel's point that the *Leite* --

4    *Leite*?  How do you say that?

5              **MR. BESSETTE:**  *Leite*, Your Honor.

6              **THE COURT:**  *Leite*.

7         She says that the *Leite* case involved a valve manufacturer

8    and the specifications called out asbestos in the valves so

9    there was no choice here, but here the shipyard is not making

10   valves so how does that case -- why isn't that a good point

11   that she makes?

12             **MR. BESSETTE:**  Your Honor, the case is right on point.

13   First of all, plaintiffs' counsel dismisses the fact here that

14   NASSCO is not only a maintainer of this vessel, they're the

15   constructor of this vessel.  So the suggestion that *Leite* is

16   distinguishable based on the fact that there's no manufacturing

17   or construction activities is misplaced.

18        First and foremost, we're dealing with a vacuum here on

19   what exactly plaintiffs' allegations are.  The complaint is

20   very vague.  It leaves a lot open for guesswork here and

21   filling in the blanks as to what Mr. Pizarro did or did not do

22   or what NASSCO did or did not do.

23             **THE COURT:**  Well, wait.  She says that you were just a

24   shipyard.  You were not constructing the vessel, that you had

25   nothing to do with the renovation other than you happened to

1   supply the shipyard.  Now, maybe I misunderstood.

2       Did I misunderstand you?

3           **MS. UCHIMURA:**  That's a slight misunderstanding,

4   Your Honor.

5           **THE COURT:**  All right.  Tell me what NASSCO's role

6   was.

7           **MS. UCHIMURA:**  NASSCO's role was performing repair and

8   construction work on the vessel while undergoing an overhaul at

9   the shipyard.  They did work --

10          **THE COURT:**  Well, then, maybe they did have to use

11  asbestos.

12          **MS. UCHIMURA:**  But that showing hasn't been made here,

13  Your Honor.

14      Additionally, they were removing asbestos-containing

15  insulation and they were also removing asbestos-containing

16  gaskets.  And, again, I think this -- I'm sorry.  I made a

17  little trip-up here.

18          **THE COURT:**  Well, why would they even have asbestos

19  there if the Navy didn't require it?

20          **MS. UCHIMURA:**  Because they're performing removal work

21  of asbestos-containing materials.  We're talking about 1985 so

22  there's not really realistically much in the way of new

23  installation of asbestos materials.

24          **THE COURT:**  So they're taking out the old asbestos?

25          **MS. UCHIMURA:**  Correct.  They were removing asbestos

gaskets, they were removing asbestos-containing insulation, and they were failing to take precautions to prevent asbestos exposure.

       **THE COURT:**  Okay.  Well, hold that thought.

    Why isn't that good enough?  The Navy didn't make you do it in a negligent way.

       **MR. BESSETTE:**  Because that's not true, Your Honor. NASSCO constructed the vessel in 1972 with the very asbestos that they're claiming plaintiff was exposed to while he was aboard the vessel between 1982 and 1988.

       **THE COURT:**  No.  She just told me they were suing over 1985.

       **MR. BESSETTE:**  Well, he's aboard the vessel between 1982 and 1987, Your Honor.  NASSCO does various repairs aboard the vessel starting in 1985 and running through 1991.

    Your Honor, NASSCO has an absolute right to federal jurisdiction in this case.  NASSCO performed the construction and maintenance of the vessel pursuant to government contracts, government specifications, government controls.  This is not a premises at a shipyard in and of itself.  It's a vessel of where this activity took place.  It's a Navy ship involving an enlisted Navy personnel.

    Plaintiffs' reply brief runs through the conditions that they claim that NASSCO failed to do, failed to warn Mr. Pizarro of the health hazards.  Well, that, of course, would date back

1   to 1972 when NASSCO constructed the vessel and anytime

2   subsequent to that that Mr. Pizarro was on the vessel and that

3   he doesn't see a warning.

4        Your Honor, all of this conduct that they're alleging that

5   NASSCO failed to do is the subject of strict governmental

6   controls under NavSea regulations, under NavFac regulations.

7   Beginning in the 1970s, shipboard personnel from shipyards who

8   came aboard were mandated to adhere to strict governmental

9   regulations in order to perform their contracts, and that's

10  exactly what happened here.

11       And all of these failings that they're suggesting are, in

12  fact, in writing from the government.  So this is exclusively

13  federal jurisdiction here, Your Honor.

14           **THE COURT:**  Why isn't that right?

15           **MS. UCHIMURA:**  I think Your Honor hit it on the head

16  when you made the point that the government did not require

17  NASSCO to perform their work negligently.  That is precisely

18  the basis of our claims against NASSCO here, is that it's not

19  just that NASSCO used asbestos or NASSCO disturbed asbestos;

20  it's that they did so in a negligent manner such that

21  Mr. Pizarro was exposed to asbestos.

22       Additionally --

23           **THE COURT:**  Well, what would we say to the jury to

24  make sure everyone's protected?  How would we do that?  Would

25  we say something like the exposure to asbestos was

 1   inevitable -- some exposure was inevitable because the Navy

 2   required asbestos, but they can only be held liable if there

 3   were things that the Navy did not require that they could have

 4   done to minimize and the Navy didn't prohibit that and they

 5   failed to do it?  How would we instruct the jury?

 6        MS. UCHIMURA:  Well, respectfully, Your Honor, I don't

 7   know that we are at the point where there has been any evidence

 8   submitted by NASSCO showing that asbestos exposure was

 9   inevitable, that they could not have performed their work

10   safely.

11        THE COURT:  No, no.  The original specifications

12   called for it, back in the '70s, called for asbestos.  True?

13        MS. UCHIMURA:  There are some specifications that

14   called for the use of asbestos.  However, as set forth in our

15   moving papers, those specifications are primarily performance

16   specifications, and in many instances nonasbestos materials

17   could have met the performance requirements of those

18   specifications.

19        We submitted the testimony of Gerard Champagne, a Navy

20   ship inspector, who testified that if there was a -- in many

21   instances -- and, again, we don't -- we're speaking in a vacuum

22   here because NASSCO has not in fact put before this Court any

23   specific military specifications for the asbestos products at

24   issue here; but setting that issue aside, we have presented

25   affirmative evidence that nonasbestos materials -- the Navy in

1   many instances would have accepted nonasbestos materials so

2   long as they fit the form and function of the materials

3   specified by the government.

4         Additionally, we've presented evidence that not only could

5   NASSCO have complied with its state law duty of care, it was

6   actually required to do so under applicable federal law.  We've

7   submitted evidence of the Walsh-Healy Public Contracts Act,

8   which required private contractors with the United States

9   government to ensure that no employee is exposed to hazardous

10  substances, including asbestos dust, in excess of regulatory

11  limits.

12        And, again, this is kind of a flub on our part.  We did

13  submit an errata earlier today because the full text of the

14  Walsh-Healy Act was not included as an exhibit, but this is

15  Exhibit D to the Guzman declaration at page 13823.

16        **THE COURT:**  Has there been a Court of Appeals decision

17  that blesses your idea, which is that if you've got performance

18  specifications and something other than asbestos would have

19  performed, then the Navy didn't make them do it?  That's your

20  argument.  Your argument was if it did not specify asbestos and

21  something other than asbestos would have satisfied the

22  performance spec, then you win.  Is there a decision that so

23  holds?

24        **MS. UCHIMURA:**  I can't think of a decision right off

25  the top of my head, Your Honor, but I think that given that the

1   purpose of the government contractor defense is one of

2   preemption -- i.e., if you can only perform your contractual

3   obligations to the government by violating state law -- that in

4   that instance the federal law preempts state law.  But if

5   you're able to do both, if you are able to comply with your

6   contractual obligations to the government by providing -- and,

7   again, this is --

8           **THE COURT:**  All right.  Let me ask the same question

9   in the opposite way.  Is there a decision that NASSCO wants me

10  to look at that rejects that idea?

11          **MR. BESSETTE:**  Well, first of all, the cases that

12  address that, Your Honor, deal with the manufacturer.  NASSCO

13  is not a manufacturer of asbestos-containing products.

14          **THE COURT:**  You built the whole ship.

15          **MR. BESSETTE:**  They built the whole ship.  They put

16  together products --

17          **THE COURT:**  That's a product?

18          **MR. BESSETTE:**  -- that are specified by the

19  United States government.

20          **THE COURT:**  Yeah.  So what, though?  It was a

21  performance spec she says, not an asbestos spec.

22          **MR. BESSETTE:**  That's not true, Your Honor.  They

23  haven't even specified what product it is that they're

24  generically referring to as being asbestos containing.  But

25  throughout a vessel dating well beyond 1972, there are a

1    multitude of asbestos-containing products that were not

2    replaced until the 1980s that contained asbestos in them, and

3    that, again, was something that the manufacturers --

4            THE COURT:  But she's saying that the original specs

5    didn't require asbestos anyway.  They were performance specs.

6            MR. BESSETTE:  That's not true, Your Honor.  The

7    specification is for a multitude of products, and they have not

8    specified which products.

9            THE COURT:  Does your declaration from your admiral

10   specifically say the specs for this ship specifically required

11   asbestos?

12           MR. BESSETTE:  Well, I'm sure we can get that

13   declaration, Your Honor, because we now know the name of the

14   ship.  It's multiple ships, actually.

15           THE COURT:  You didn't know the name of the ship in

16   this case?

17           MR. BESSETTE:  Not until the 23rd of December when we

18   filed the removal.

19       But, Your Honor, we have not been specified as to what

20   products they're referring to and what specifications they're

21   referring to.  Again, we're in a vacuum here.  We don't know

22   what workplaces Mr. Pizarro worked in and was purportedly

23   exposed to asbestos.  We don't know what products are involved.

24       But clearly there are specifications.  Crane Co. was in

25   this case until several weeks ago when they were dismissed.

1  Clearly Crane gaskets, again for Navy vessels, were specified

2  to contain asbestos.

3          THE COURT:  What did he do on board this vessel?  What

4  was his job?

5          MS. UCHIMURA:  Would you mind if Mr. Guzman answered

6  that question, Your Honor?

7          THE COURT:  Please.

8          MR. GUZMAN:  Your Honor, my apologies.  Carlos Guzman

9  on behalf of plaintiffs.

10     Mr. Pizarro was in the Machinery Department.  He was a

11 machinist and he at this point was assisting with the Navy

12 ship's crew as opposed to NASSCO's crew that was coming aboard

13 during the overhaul.  So his job was kind of normal regular

14 upkeep and maintenance of the equipment.  They were doing an

15 overhaul on the ship.  It's in that context that he recalls

16 seeing NASSCO workers, and will testify at deposition, removing

17 insulation and other what plaintiffs contend were asbestos

18 products during the course of their removal of products in

19 place.  In addition to kind of the other work they also did on

20 civilian ships at that same shipyard, this was work that they

21 were doing in the 1980s aboard a Navy ship in this particular

22 instance.

23          THE COURT:  Let me ask the plaintiff something.  One

24 way to go on this would be to not rule on the motion, just keep

25 it in abeyance, see how the case develops and see if your

theory winds up being more specific so that the defendant can then say, "Ah ha, yes, here is where that was required to be asbestos."

MS. UCHIMURA:  I don't know that that necessarily works, Your Honor, since given that a removing defendant has only 30 days from when they are first notified of a basis to remove.

THE COURT:  I'm saying keep the case for now.  I'll make y'all go out and take discovery, go to every shipyard in America, you know, eat asbestos for breakfast, learn everything there is to know about asbestos; and then once you know what your theory is going to be, then you come back and say, "Okay, Judge, here's our theory."  And then NASSCO can say, "Ah ha, see, here"; or they can say, "Okay, we concede there's no -- we don't have a colorable defense here."  And then I would remand it.  You'd have all that discovery done.  You could go back to state court if I remanded it with the benefit of all that discovery.

MS. UCHIMURA:  The problem --

THE COURT:  But here you have such a generic generalized pleading, and then you blame them for not being specific but you're the one who was vague to begin with.

MS. UCHIMURA:  The problem with that, Your Honor, is that what we are dealing with here is a plaintiff who has been diagnosed with a terminal disease.  He has a very limited

```
 1   amount of time to live; and if we are here in federal court and

 2   then we work up the case here and then we are then remanded

 3   back to state court, we'll have to go in for a trial date in

 4   state court, which means we are --

 5            THE COURT:  What if I promise you a trial within 12

 6   months?

 7            MS. UCHIMURA:  Even 12 months, frankly, Your Honor, is

 8   not going to protect Mr. Pizarro's interests.  In California

 9   state court we believe that we'd be able to show that he's

10   entitled to a trial within 120 days; and if we're litigating

11   this case --

12            THE COURT:  Is he really that sick?

13            MS. UCHIMURA:  Yes.  He has mesothelioma.

14            THE COURT:  How much time does the doctor give him?

15            MR. GUZMAN:  Six months or less, Your Honor.

16            THE COURT:  Have you done any discovery against these

17   people?  You're not ready to go to trial.  You're just at the

18   pleading stage.  You only found out in December what boat he

19   was on.  So do you really want to go to trial in 120 days?

20            MR. GUZMAN:  It seems like Your Honor is --

21            THE COURT:  I can give you a trial in 120 days.

22            MR. GUZMAN:  It seems that Your Honor is directing the

23   question to me so I'll step in.

24            THE COURT:  Yes.

25            MR. GUZMAN:  So I'll state this delicately.  I don't
```

1  think that was factually correct what Mr. Bessette said

2  regarding just finding out the name of the ship.  Plaintiffs

3  did serve prior to removal responses to the Alameda County

4  Superior Court standard interrogatories which set forth his

5  ship history.  Verifications of -- verifications for the

6  amended responses were subsequently served.

7      There was specific reference in not only the notice but

8  also the, quote/unquote, "Amended Notice of Removal" that

9  specifically identified specific ships and vessels including

10  within the NASSCO-submitted declarations.

11      THE COURT:  Wait a minute.  Are you saying that they

12  are not timely under the 30-day rule?

13      MR. GUZMAN:  I think -- well, there's definitely an

14  argument about this, quote/unquote, "Amended Notice of

15  Removal"; but either way, to the extent that it's being claimed

16  today that they didn't have notice of what ships were at issue,

17  that's just not borne out by the actual evidence and the

18  procedural timing.

19      THE COURT:  If you were to -- look, this doesn't make

20  sense to me.  What I'm trying to say to you is, I don't know if

21  I could do 120 days but I could get close to it.  If he's

22  really going to die, I'll make all these defendants go to

23  trial.  Too bad for them.

24      See, if it really is a delay thing, I get cases to trial

25  faster in this court than in state court by far.  I've tried

```
 1   cases in state court for 24 years and in federal court, and I
 2   can tell you if he's really dying, I would get him to trial,
 3   but I don't think you really want that.
 4        MR. GUZMAN:  Plaintiffs do really want that,
 5   Your Honor.
 6        THE COURT:  No, you don't.  You haven't even taken any
 7   depositions from these people.  You don't have a clue as to
 8   what they did in the case.
 9        MR. GUZMAN:  I would submit to the Court that the
10   plaintiffs do, in the sense -- I mean, as the cases that are
11   cited, including the *Morton* decision, which involved this very
12   defendant on identical allegations where it was remanded, this
13   is a defendant that's --
14        THE COURT:  That was another judge.
15        MR. GUZMAN:  Understood.
16        THE COURT:  That was Judge Real in L.A.  It's not a
17   Court of Appeals decision.
18        MR. GUZMAN:  Understood.  And my point is that it
19   was --
20        THE COURT:  And you didn't even cite it.  You didn't
21   even cite it.  How organized can you be or disorganized?  You
22   didn't cite the best case you got going for you.  You bring it
23   up on the side in oral argument.
24        MR. GUZMAN:  Fair enough.
25        THE COURT:  It is fair.
```

1          **MR. GUZMAN:**  Absolutely.  My point was being that with

2     respect to this defendant, I won't use the word "notorious,"

3     but it's well known in the litigation because of this

4     long-standing practice of these types of violations, not just

5     aboard -- and I think there's an issue here with respect to

6     this just happened in this instance to be conduct aboard a Navy

7     ship.  I've worked in other cases where there are records of

8     other cases where the same conduct is being done by NASSCO on

9     civilian ships.  And so the practice and procedures that were

10    endangering shipboard personnel are common whether or not the

11    Navy was involved, the ripping out unprotected of insulation.

12    They're in effect trying to blame the Navy for conduct that

13    they were doing.

14          **THE COURT:**  Listen, in state court how much discovery

15    was taken?

16          **MR. GUZMAN:**  Prior to removal?

17          **THE COURT:**  Yes.

18          **MR. GUZMAN:**  Plaintiffs had served their responses to

19    discovery and it was removed shortly thereafter.

20          **THE COURT:**  No depositions were taken?

21          **MR. GUZMAN:**  True.

22          **THE COURT:**  How long has this case been pending in

23    state court?

24          **MR. GUZMAN:**  Let's see, we do have the filing date

25    here, Your Honor.  It looks like November 20th, 2019, it was

1   filed in state court.

2       Plaintiffs' point is that certainly by 1985 and 1987,

3   regardless of specifications that may have been in place,

4   whether or not they require it, and we maintain they do not

5   require asbestos, but to the extent that it was known that

6   asbestos insulation was being removed, Mr. Pizarro's years

7   aboard this vessel were 1985 to 1987.

8       NASSCO not only had constructive knowledge but actual

9   knowledge of the hazards of asbestos at that point.  So then in

10  the 1980s to be removing asbestos insulation in this negligent

11  manner, it's well outside the Navy.  The Navy required them to

12  use safe precautions by that time, to use safe methods.

13          **THE COURT:**  All right.  Give me a specific thing that

14  NASSCO failed to do that was negligent in the removal.

15          **MR. GUZMAN:**  Right.  So removing asbestos-containing

16  insulation without wet-down methods, without visqueening off

17  area.  Mr. Pizarro will testify at his deposition that he

18  remembers being in spaces and NASSCO workers identified as such

19  by their clothing, et cetera, were just ripping out asbestos

20  insulation or what -- on high-pressure steam lines,

21  high-temperature steam lines, without any precautions, without

22  stopping Navy personnel from walking through.

23          **THE COURT:**  Well, steam lines would be wet.

24          **MR. GUZMAN:**  The insulation around the pipes.

25          **THE COURT:**  Oh, I see.

1          **MR. GUZMAN:**  So this is dry chalk-like insulation,

2    ripping that out in the mid-1980s in a manner that created

3    visible dust.  So this is a product in place whether it be on a

4    civilian ship or a Navy ship.

5          **THE COURT:**  And they were doing that where he was

6    working in his workspace?

7          **MR. GUZMAN:**  Correct, without any protections, without

8    stopping Navy personnel from going into the space, and that's

9    his recollection in the 1980s.  So whether or not that product

10    was first put in by the Navy, which we maintain the Navy would

11    not require it, there are nonasbestos specifications for

12    insulation that go back to the 1940s.

13          **THE COURT:**  All right.  Hang on.

14       Here's what the other side is saying.  The other side is

15    saying you knew that it was dangerous, that NASSCO was tearing

16    out the asbestos; and while the Navy did require you to tear it

17    out, it didn't require you to tear it out in an unsafe way.

18    You could have wetted it all down and done something to

19    mitigate the dust.

20          **MR. BESSETTE:**  Your Honor, this is well beyond, first

21    of all, the evidence that has been submitted in this case.  So

22    we're dealing with hypotheticals here.

23       But I will tell you Steve Severs served a -- we served a

24    declaration of Steve Severs absolutely running through

25    declarations that the Navy had relative to protections for

1   asbestos-containing materials on board ships, including ships

2   that NASSCO manufactured.

3        They're set forth in -- as Exhibit F to Mr. Guzman's

4   declaration is a SUPSHIP manual, and that SUPSHIP manual has

5   been provided to you incompletely, but it references various

6   OPNAV instructions, including 6260.1, 6260.2, and then OPNAV

7   Instruction 5100.19.  These are government mandates, absolute

8   government mandates, that we have to adhere to aboard ships to

9   prevent exposures to --

10          **THE COURT:**  No, it just irritates the devil out of me.

11   Why couldn't you have done it in a safe way?  Where does it say

12   it has to be done in an unsafe way?

13          **MR. BESSETTE:**  That's correct, Your Honor, and that's

14   the safe way as prescribed by --

15          **THE COURT:**  Then they win.  They win.

16          **MR. BESSETTE:**  -- as prescribed by the United States

17   government.

18          **THE COURT:**  The government didn't say to you you had

19   to do it so there would all be dust in the air, did they?

20          **MR. BESSETTE:**  Your Honor, these areas are enclosed.

21   They're encapsulated.  Asbestos is marked.  It's wet down.  So

22   this hypothetical testimony that has been provided to you --

23          **THE COURT:**  I've run out of steam.  I've had a long

24   day, and I've got one more question for you.

25          **MR. BESSETTE:**  Okay.

1            **THE COURT:**  If I keep this case here, will every

2    single defendant promise to be ready to go to trial in 120

3    days?

4            **MR. BESSETTE:**  I can speak for NASSCO.  We'll be ready

5    to go in 120 days.

6            **THE COURT:**  Anybody else going to object?  Raise your

7    hand if you would object to a trial in 120 days.

8            **MR. SANDGREN:**  I would, Your Honor.

9            **THE COURT:**  All right.  Come up here and give me your

10   name and give me your reason.

11           **MR. SANDGREN:**  Sure.  Good afternoon.  Michael

12   Sandgren on behalf of two clients, Metalclad Insulation Company

13   and Pep Boys Manny, Moe & Jack.

14       For both of these clients, especially I'll start with

15   Pep Boys which is a friction client, it requires that we

16   locate, identify, and depose people with knowledge of the

17   sales -- the alleged sales from our client.  We have not been

18   able to conduct discovery.  There is a stay on discovery until

19   it's authorized.

20           **THE COURT:**  Who says that?

21           **MR. SANDGREN:**  There's been no discovery conducted so

22   far.  We have propounded discovery and it has not been

23   answered.  So we don't have answers.  We don't know witnesses.

24   We need to get access to the pathology.  Getting pathology out

25   of the medical providers is extremely difficult, especially

```
1    under the new HIPAA rules.  It sometimes requires quite a bit

2    of effort even with the cooperation of plaintiffs.

3              THE COURT:  No.  There must be a special school that

4    they send you to to be able to whine like that.

5              MR. SANDGREN:  Your Honor --

6              THE COURT:  All this and you haven't even begun any of

7    this discovery.  I don't know the answer.  I'm going to take it

8    under submission.

9         No.  I'm giving you a chance to respond to the Manny Real.

10   It was unfair for them to spring this on you so I give you till

11   noon tomorrow to send me a letter brief up to three pages

12   distinguishing this decision.

13             MR. BESSETTE:  Thank you, Your Honor.

14        And might I add, relative to the colorable defenses, we've

15   been limited to the *Boyle* case here.  We have raised federal

16   defenses in the form of the Yearsley doctrine and under

17   government enclave, and so we have not addressed those two.

18             THE COURT:  I know we haven't because I've run out of

19   time.  Do you know how much time -- you know, I got here at

20   5:00 a.m. and I've been working.  I've got a big criminal case.

21   Do you know how many more cases I've got?  The last thing I

22   need is your asbestos case.  I've got so many cases and it's so

23   hard to do this job, and all you defense lawyers want to run

24   into federal court, run into federal court, and make it even

25   harder on us.  So I'm sorry.
```

```
 1              MR. BESSETTE:  I appreciate what you're saying,

 2   Your Honor.

 3              THE COURT:  You raised four different grounds and I've

 4   only been able to get my hands around one of them.

 5          All right.  Under submission as soon as I get your letter

 6   brief tomorrow.

 7              MR. GUZMAN:  Thank you, Your Honor.

 8              MS. UCHIMURA:  Thank you, Your Honor.

 9              MR. BESSETTE:  Thank you, Your Honor.

10              MR. SANDGREN:  Thank you, Your Honor.

11                 (Proceedings adjourned at 2:39 p.m.)

12                          ---oOo---

13

14                    CERTIFICATE OF REPORTER

15          I certify that the foregoing is a correct transcript

16   from the record of proceedings in the above-entitled matter.

17

18   DATE:   Thursday, April 2, 2020

19

20

21

22   _____

23          Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
                    U.S. Court Reporter
24

25
```