1
2
3
4
5

6        UNITED STATES DISTRICT COURT

7
         NORTHERN DISTRICT OF CALIFORNIA
8

9

10   RENATO C. PIZARRO and MERCEDITA
     D. PIZARRO,
11                                              No.  C 19-08425 WHA
                   Plaintiffs,
12
           v.
13
                                                **ORDER RE MOTIONS FOR**
14   NATIONAL STEEL AND                         **SUMMARY JUDGMENT**
     SHIPBUILDING COMPANY; SPIRAX
15   SARCO, INC.; BW/IP, INC.; CBS
     CORPORATION; CRANE CO.;
16   FLOWSERVE US INC.; FMC
     CORPORATION; GENERAL ELECTRIC
17   COMPANY; GOULDS PUMPS LLC;
     GREENE, TWEED & CO., INC.; IMO
18   INDUSTRIES, INC.; INGERSOLL-RAND
     COMPANY; PEP BOYS – MANNY, MOE
19   & JACK OF CALIFORNIA; and VELAN
     VALVE CORPORATION,
20
                   Defendants.
21   _____

22
                         **INTRODUCTION**
23
           For the reasons stated on the record, all motions for summary judgment, with the
24
     exceptions of National Steel and Shipbuilding Company (NASSCO) and Pep Boys – Manny,
25
     Moe & Jack of California (Pep Boys), were **DENIED.**
26
           For the reasons discussed below, motions by NASSCO and Pep Boys are **GRANTED IN**
27
     **PART AND DENIED IN PART**.
28

1
2
3
4
5
6
7
8
9
10
11

United States District Court
Northern District of California

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ANALYSIS**

1.    **NATIONAL STEEL AND SHIPBUILDING COMPANY.**

The parties agree that maritime law applies.  NASSCO moves for summary judgment on the theory that, as a government contractor, it enjoys derivative immunity from asbestos-related liability.  In the alternative, should material facts regarding its overhaul of the *USS Bristol County* remain in dispute, NASSCO moves for partial summary judgment as to plaintiffs' premises owner claim for relief.  Plaintiffs oppose all grounds for summary judgment.

A.    **Government Contractor and *Yearsley* Immunity.**

The crux of the matter:  whether NASSCO complied with Navy specifications and guidelines while overhauling the *USS Bristol County*.

Defenses derived from a contractor's business with the government may come from several distinct doctrines.  Both "government contractor" and *Yearsley* immunity arguably apply here.  Under both, however, contractors receive protection only when they have complied with relevant federal standards.  NASSCO claims complete adherence to those standards; plaintiffs allege negligence and nonconformity.  After consideration of the parties' briefs and attached exhibits, as well as oral argument, this order finds that material facts about this compliance remain "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

NASSCO asserts that the Navy is to blame for any asbestos exposure because of derivative sovereign immunity under *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940), and the preemptive government contractor defense outlined in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988) (Dkt. No. 234 at 11–12, 14).

In *Yearsley*, the Supreme Court found that where the United States government's "authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress," then "there is no liability on the part of the contractor" who "simply performed as the Government directed."  *Yearsley*, 309 U.S. at 20–21; *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 167 (2016).  Further clarification comes from the Supreme

2

Court's decision in *Campbell-Ewald Co. v. Gomez*, which broadened the application of the *Yearsley* defense beyond public works but did not confer absolute, "unqualified immunity from liability and litigation." 577 U.S. at 166. The decision stated, "Critical in *Yearsley* was not the involvement of public works, but the contractor's performance in compliance with all federal directions." *Id.* at 167 n.7. Crucial, then, to a *Yearsley* analysis is not merely the existence of a government contract, but whether the government contractor met the "explicit instructions" it received from the government and did not overstep federal law while acting on those instructions. *Id.* at 166.

An alternate government-contractor defense, stemming from *Boyle v. United Technologies Corp.*, preempts state "[l]iability for design defects in military equipment." 487 U.S. 500, 512 (1988). This defense applies when a contractor shows

> (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Ibid.* Not necessarily confined to military contractors, however, "[t]he Government contractor defense . . . shields contractors from tort liability" and "exists as much in procurement contracts as in performance contracts." *Hercules Inc. v. United States*, 516 U.S. 417, 421–22 (1996); *see also Boyle v. United Technologies Corp.*, 487 U.S. 500, 506 (1988). But, under the *Boyle* factors, simply having a contract with the government is not enough. The second factor requires proof of total conformity. The defendant bears the burden of establishing this affirmative defense, and, at the summary judgment stage, the defendant must do so in a way that "no reasonable jury could fail to find that the defense ha[s] been established." *Snell v. Bell Helicopter Textron*, 107 F.3d 744, 746 (9th Cir. 1997).

Plaintiffs seek to hold NASSCO liable for the performance of its government contract, specifically for "the removal of asbestos-containing thermal insulation and flooring materials without the use of proper precautions or issuance of warnings." A dispute over performance goes directly to the heart of both *Boyle* and *Yearsley* defenses, and what the Supreme Court

United States District Court
Northern District of California

said was "critical" to the extension of federal-interest immunity. *Campbell-Ewald*, 577 U.S. at 167 n.7. NASSCO concedes that the performance prong of *Boyle* "is similar to the elements of the *Yearsley/Cambell-Ewald* standard," so this order will now focus on the foremost dispute of material facts surrounding NASSCO's performance of its government contract (Dkt. No. 276 at 6, 26).

NASSCO relies on the testimonies of Stephen B. Severs, Christopher R. Herfel, P.M. Bessette, Thomas Fitzgibbons, and Paul Desilets in its motion, and provides enough evidence to infer that the Navy provided all manner of specifications and control. For example, NASSCO claims that the Navy oversaw repairs and sent representatives to check on the progress of NASSCO workers while also confirming safety precaution conformity. NASSCO also claims it rigorously followed every requirement in a "non-discretionary" manner, and that the "Navy's acceptance or approval of work performed by a contractor constitutes evidence that the work conformed to . . . instructions/specifications." NASSCO particularly relies on the testimonies of "Herfel, Severs, and Fitzgibbons [to] [confirm] that NASSCO'S work was the subject of extensive U.S. Navy involvement and oversight throughout" the process of overhauling the *USS Bristol County* (Dkt. Nos. 234 at 14–18, 26; Severs Decl. at ¶¶ 9–11, 14–16(f) and Decl. Exhs. B and B-1 at Bates pages 10205-10229; Herfel Decl., at ¶¶ 20, 22–24, 26; Fitzgibbons Decl. at ¶¶ 3-7; Desilets Dep. at 36:8–42:24).

On the other hand, plaintiffs maintain that NASSCO did not strictly follow guidelines and relied on its own discretion in the overhaul process. Plaintiffs reach this opposite conclusion by also citing Severs, Herfel, Bessette, Fitzgibbons, and Desilets, in addition to nine other crewmembers and experts (plaintiff Renato Pizarro, Marty Wingett, Rosauro Ebbay, Barton Deem, Charles Ay, John Belfiore, David Brewer, Gary Hampton, and Francis Burger). Plaintiffs bolster their opposition by pointing to NASSCO's own admissions of the "Navy's limited involvement in the overhaul and repair work that NASSCO performed on the *USS Bristol County*," which, plaintiffs claim, are "corroborated by the testimony of several other of Mr. Pizarro's shipmates [including] Paul Desilets [and] Thomas Fitzgibbons." Plaintiffs even quote Fitzgibbons in their favor, stating that "under oath" Fitzgibbons testified that Navy

4

United States District Court
Northern District of California

1    supervisors were *not* aboard the ship to monitor NASSCO workers.  These supervisors merely

2    signed off on certain "milestones" of repair and construction, allowing for plenty of NASSCO

3    discretion to reach each milestone as they pleased (Dkt. No. 276 at 6, 7, 13, 28; Fitzgibbons

4    Dep. at 219:10–221:18).

5        NASSCO tries to undercut the testimonies of Severs (whom NASSCO substantially cites

6    in its own motion), Ebbay, Ay, Burger, and a Marisa Y. Uchimura, in addition to various other

7    depositions NASSCO claims are unrelated to the case at hand, while plaintiffs try to discredit

8    testimonies on which both parties substantially rely, especially *plaintiffs* (e.g. "the declarations

9    of Christopher Herfel and Captain Thomas Fitzgibbons do not substantially comply with 28

10   U.S.C.A. § 1746," *but see* Dkt. No. 276 where plaintiffs cite Herfel at 6, 7, 10, 21, 24; and

11   Fitzgibbons at 13, 14, 21).  Clearly, in this fact fiasco, material facts, that both parties

12   simultaneously build on and dismiss, relate to performance of a government contract and

13   remain in heated dispute.  Untangling the fact fiasco requires a jury (Dkt. Nos. 276 at 18; 288

14   at 2–4, 7–11)

15        Even though NASSCO includes both the *Yearsley* and *Boyle* defenses in its motion, it

16   implies that by raising the *Yearsley* defense, it does not have to satisfy the *Boyle* factors.

17   NASSCO supports its statement by directing the court's attention to *Gomez v. Campbell-Ewald*

18   *Co.*, 2013 WL 655237 (C.D. Cal. 2013).  This district court decision was reversed and vacated

19   by both our court of appeals and the Supreme Court on the very point of argument NASSCO

20   wishes to make.  Citing a decision for one of the very propositions on which it was overturned

21   falls beyond the pale (Dkt. No. 234 at 13).

22        The *Boyle* factors are important to satisfy in this instance, not only because NASSCO

23   itself includes the defense in its motion and concedes that the second *Boyle* factor shares

24   similarities with *Yearsley* standards, but also because maritime law recognizes the *Boyle*

25   framework as a legitimate defense worthy of genuine analysis.  *See Lund v. Crane Co.*, 2016

26   WL 2742383 (C.D. Cal. 2016).

27        For these reasons, NASSCO's motion for summary judgment is **DENIED.**

28

### B.     Premises Owner Liability.

As to NASSCO's request for partial summary judgment regarding premises owner liability, plaintiffs reply that their claim for relief "is for [both] 'premise owner/contractor liability' — [and] is not limited to just premises liability, [but] also includes claims that the negligent activities of defendant's employees exposed Mr. Pizarro to asbestos."  Because the overarching issues of potentially negligent and noncompliant performance remain in dispute (see previous section), and because "[t]he general maritime law has recognized the tort of negligence for more than a century, and . . . breaches of a maritime duty are actionable when they cause death, as when they cause injury," NASSCO cannot ask for partial judgment on a legitimate and unsettled matter.  *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 820 (2001); (Dkt. No. 276 at 29).

This order finds that the facts regarding NASSCO's compliance with safety standards remain unsettled and affect both work done under a government contract *and* NASSCO's own discretion as a premises owner.  Therefore, NASSCO's request for partial summary judgment is also **Denied.**

### 2.     Pep Boys.

Plaintiffs level five claims for relief and a general prayer for punitive damages at defendant Pep Boys.  The auto parts retailer seeks partial summary judgment on three fronts: (1) negligent misrepresentation, (2) fraud by nondisclosure, and (3) plaintiffs' request for punitive damages.  Plaintiffs waive negligent misrepresentation and fraud by nondisclosure, so Pep Boys' requests for partial summary judgment as to those claims are Granted.  The main dispute, then, lies with punitive damages.  This order finds that plaintiffs sufficiently present enough evidence of malice to survive summary judgment.  Pep Boys' remaining request for partial summary judgment is Denied.

### A.     Punitive Damages

The parties agree that California law applies.  Pep Boys argues that plaintiffs lack enough evidence to meet the clear and convincing standard for malice, fraud, or oppression as required by California statute.  Therefore, Pep Boys contends, plaintiffs' prayer for punitive damages is

United States District Court
Northern District of California

1    "without merit." Plaintiffs disagree and assert that the record contains ample evidence to

2    clearly and convincingly show that Pep Boys acted with "malice [and] a conscious disregard to

3    its customers, including Mr. Pizarro." After considering the record and the arguments set forth

4    in the parties' briefs, this order finds that material facts regarding malice remain unsettled

5    enough to survive summary judgment. Whether Pep Boys actually engaged in such conduct

6    should be resolved by a jury (Dkt. Nos. 236 at 2; 264 at 14).

7         Pep Boys is an aftermarket auto parts retailer. Mr. Pizarro claims that he regularly

8    purchased asbestos-containing Bendix-brand brakes from Pep Boys at its Chula Vista location

9    between 1979 and 1997. Mr. Pizarro personally conducted annual maintenance on his and his

10   family's cars during those eighteen years. Approximately nine of those yearly tune-ups

11   included work with Bendix brakes (both for drum- and disc-brake systems) purchased from

12   Pep Boys. Mr. Pizarro did not know at the time that asbestos could cause cancer and believed

13   the brakes safe to replace on his own. Removal of old brakes included blowing out the brake

14   drums and linings with compressed air; installation of new brakes consisted of sanding,

15   abrading, and otherwise disturbing the surface of the brake pads and lining. Both removal and

16   installation created visible dust. Plaintiffs allege that this exposure to dust particles from

17   asbestos-containing car parts ultimately played a role in Mr. Pizarro's development of

18   mesothelioma and blame Pep Boys for consciously disregarding the safety of its customers

19   (Dkt. No. 264 at 5; Pizarro Dep. Vol. I at 47:4–49:15, 49:21–50:4, 51:4–11; Vol. II at 159:2–

20   11; Vol. III at 205:4–22, 211:20–212:9; Langhoff Decl. Exh. E at 2512:15–17; Exh. F at Int.

21   Ans. No. 8).

22        In California, "[p]unitive damages can be awarded only where the jury finds oppression,

23   fraud, or malice by clear and convincing evidence." *Stewart v. Union Carbide Corp.*, 190

24   Cal.App. 4th 23, 34 (2010) (internal citations omitted). The purpose of punitive damages is to

25   "punish wrongdoers and thereby deter the commission of wrongful acts." *Neal v. Farmers Ins.*

26   *Exchange*, 21 Cal. 3d 910, 928 n.13 (1978). At the summary judgment stage, "the higher

27   evidentiary standard applies" and plaintiffs must provide clear and convincing evidence that

28

United States District Court
Northern District of California

7

1    fraud, malice, or oppression occurred.  *Basich v. Allstate Ins. Co.*, 87 Cal.App. 4th 1112, 1121

2    (2001).

3         Additionally, California imposes a heightened standard for plaintiffs seeking punitive

4    damages from corporations:  "the advance knowledge and conscious disregard, authorization,

5    ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or

6    managing agent of the corporation."  Cal. Civ. Code § 3294(b).  A plaintiff, however, "need

7    not produce a smoking memorandum signed by the CEO and Board of Directors."  *Willis v.*

8    *Buffalo Pumps, Inc.*, 34 F. Supp. 3d 1117, 1133 (S.D. Cal. 2014).  Instead, a plaintiff satisfies

9    the "managing agent" requirement

> through evidence showing the information in the possession of the
> corporation [in addition to the] structure of management
> decisionmaking that [would permit] an inference that the
> information in fact moved upward to a point where corporate policy
> was formulated.  These inferences cannot be based merely on
> speculation, but they may be established by circumstantial evidence,
> in accordance with ordinary standards of proof.

15   *Romo v. Ford Motor Co.*, 99 Cal.App. 4th 1115, 1141 (2002), voided and remanded on other

16   grounds, 538 U.S. 1028 (2003).     Plaintiffs in the current suit indicate that Pep Boys acted

17   with "malice."  California's Civil Code defines "malice" in the punitive damages context as

18   "conduct which is intended by the defendant to cause injury to the plaintiff *or despicable*

19   *conduct which is carried on by the defendant with a willful and conscious disregard of the*

20   *rights or safety of others."*  § 3294 (c)(1) (emphasis added).  California courts have found that

21   for punitive damages to be awarded based on "conscious disregard of the safety of others," a

22   plaintiff "must establish that the defendant was aware of the *probable* dangerous consequences

23   of its conduct and that it wil[l]fully and deliberately failed to avoid those consequences."

24   *Hilliard v. A.H. Robins Co.*, 148 Cal.App. 3d 374, 395 (1983) (emphasis in the original); (Dkt.

25   No. 264 at 10).

26        To summarize, plaintiffs must clearly and convincingly prove that a high-ranking

27   member, or members, of Pep Boys had a hand in despicable conduct, consciously disregarding

28   the rights and safety of others while aware of the probable consequences of the continued

United States District Court
Northern District of California

8

actions.  Plaintiffs have shown that they can satisfy this burden through circumstantial

evidence in admissible forms that Pep Boys does not oppose for lack of trustworthiness.

Pep Boys argues that plaintiffs fail to provide "sufficiently probative evidence" and that

plaintiffs merely repeat the same allegations without providing any "case specific evidence."

Pep Boys writes in its reply brief to plaintiffs' opposition

> [Cal. Civ. Code § 3294] and case law cited in Pep Boys' moving
> papers demonstrate[] Plaintiffs are required to show by clear and
> convincing evidence that Pep Boys had intention to harm Mr.
> Pizarro, acted with conscious disregard for Pizarro's safety, or
> intentionally misrepresented a known material fact to Mr. Pizarro.

Pep Boys concludes that plaintiffs cannot meet this standard and "[fail] to establish a

triable issue of fact."  Pep Boys grounds its motion on the argument that plaintiffs rely on a

record devoid of malicious, oppressive, or fraudulent behavior and cannot obtain such evidence

before trial (Dkt. Nos. 236 at 7–8; 278 at 2).

This order disagrees with Pep Boys.  Plaintiffs point to admissible evidence that

Pep Boys does not resist as untrustworthy, citing trial transcripts from previous asbestos cases

in which Pep Boys was a defendant, in addition to depositions of Mr. Pizarro and answers to

interrogatories from the current suit.  Past trial transcripts prove enlightening.  Testimony

given by a Joseph Cirelli, under oath and as Pep Boys' corporate representative, establishes

that, as early as 1930, Pep Boys "was actually aware that it was selling brakes that contained

asbestos," and continued selling asbestos-containing brakes until 2001.  Even though Pep Boys

"received product information and warnings [about the connection between asbestos dust and

cancer] from manufacturers[,] it did not believe it was obligated to ensure that those warnings

were provided to the consumers."  Mr. Pizarro was one of those consumers.  For eighteen

years, he frequented a Pep Boys retailer.  Plaintiffs argue that circumstantial evidence gleaned

from the record "demonstrates that Pep Boys acted with a conscious disregard for the safety of

others when it purposefully failed to warn its customers," including Mr. Pizarro, of the dangers

within its products.  Pep Boys, plaintiffs emphasize, failed to warn its customers even while

United States District Court
Northern District of California

9

1    completely aware of the potential health hazards of asbestos.  A reasonable jury could agree

2    (Dkt. No. 264 at 5, 7–11, 14).

3        This order notes that although Pep Boys was aware of OSHA standards classifying

4    asbestos as "a hazardous, cancer causing toxic dust," and even though Pep Boys retained actual

5    knowledge that asbestos-containing products could cause mesothelioma and cancer, it was Mr.

6    Pizarro who exacerbated the situation by creating dust during personal car maintenance.  Far

7    from eviscerating a claim for punitive damages, however, Mr. Pizarro's do-it-yourself

8    maintenance bolsters plaintiffs' claim of malice.  His actions unearth several material, open-

9    ended questions.  To begin, did Pep Boys, an auto parts retailer credited with igniting and

10   expanding the aftermarket industry, know that its customers altered car parts for self-

11   installation?  If so, was Pep Boys aware that alteration of brake linings by sanding was a

12   common industry practice in professional mechanic shops or at home?  And lastly, in light of

13   the two previous considerations, did Pep Boys continue to sell asbestos-containing products

14   without warning consumers in spite of the fact that do-it-yourself mechanics necessarily had to

15   alter asbestos-containing products for regular use?  In this instance, a reasonable jury could

16   conclude that the continued, warning-less sale of asbestos-containing products — by a major

17   aftermarket retailer, no less — rises to "despicable" and malicious conduct as outlined in the

18   California Code (Dkt. No. 264 at 6).

19       Plaintiffs have presented evidence of malice sufficient to create a material issue of

20   disputed fact.  A jury must aid in sorting out whether the record truly depicts a disregard of

21   customer safety despite Pep Boys' knowledge of the potential dangers of certain automotive

22   products.  Pep Boys' request for partial summary judgment as to punitive damages is **DENIED.**

23                                    **CONCLUSION**

24       For the reasons above, NASSCO's requests for summary judgment and partial summary

25   judgment are **DENIED.**  Pep Boys' requests for partial summary judgment as to negligent

26   misrepresentation and fraud by nondisclosure are **GRANTED** because plaintiffs waived those

27   claims for relief.  Pep Boys' remaining request for partial summary judgment as to punitive

28

United States District Court
Northern District of California

10

damages is **DENIED.**


        **IT IS SO ORDERED.**


Dated:  March 30, 2021.


_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE